UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
                                                          :
            - against -                                   :        15-CR-153-6 (VSB)
                                                          :
                                                          :        **OPINION & ORDER**
MALIK SAUNDERS,                                           :
                                                          :
                            Defendant.                    :
----------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Malik Saunders ("Petitioner" or "Saunders") for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Because Saunders fails to demonstrate extraordinary and compelling circumstances that would warrant the reduction of his sentence, and because the Section 3553(a) factors militate against reducing Saunders' sentence, Saunders' motion for compassionate release is DENIED.

**I.    Background and Procedural History**[1]

In August 2013, shortly after completing a five-year federal prison sentence on narcotics conspiracy charges, Saunders rejoined a drug trafficking organization that sold large amounts of cocaine, crack cocaine, heroin and other drugs in the New York area and Vermont. (PSR ¶¶ 13, 21, 59–60.) During the time Saunders had been in prison, a cooperating witness, later identified as Steven Christopher, had been the organization's main supplier of the crack cocaine and heroin sold by the organization in Vermont. (*Id.* ¶ 21; Doc. 711, at 1.) Saunders initially negotiated an arrangement with Christopher whereby Saunders would supply the heroin and Christopher would

---

[1] The facts contained in this section are taken from Saunders' Supplemental Presentence Investigation Report ("PSR"), filed on February 9, 2024. (Doc. 741.)

supply the crack cocaine for resale in Vermont. (PSR ¶ 21.) However, in late 2013 a dispute arose between Christopher and Saunders after Saunders began supplying members of the drug organization with crack; thereafter, Saunders became the main supplier of both drugs. (*Id.*) Around the same time, Christopher was robbed, and Saunders met with Christopher to plan retaliation against the people who robbed him. (*Id.* ¶ 22.) Saunders directed an individual known as "Mace" to shoot the people who robbed Christopher, and Saunders gave Mace a gun to carry out the shooting. (*Id.*) Christopher and Mace were ultimately unable to find the robbers, so their plans never came to fruition. (*Id.*)

Saunders was arrested on April 10, 2016. A superseding indictment was filed on March 17, 2017. (*Id.* ¶ 1; *see also* Doc. 182 ("S4 Indictment").) Count One charged Saunders and six co-defendants with conspiring to distribute and possess with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1), including five or more kilograms of cocaine, 280 grams or more of crack cocaine, and one or more kilograms of mixtures containing heroin, in violation of 21 U.S.C. § 841(b)(1)(A). (S4 Indictment ¶¶ 1–3; PSR ¶ 2.) Count Two charged Saunders and his co-defendants with possessing a firearm in furtherance of the narcotics conspiracy under 18 U.S.C. § 924(c). (S4 Indictment ¶ 4; PSR ¶ 3.) Saunders pled guilty to both counts on April 11, 2017. (PSR ¶ 9.)

I sentenced Saunders on January 23, 2018. After a lengthy colloquy with the parties on various issues, I calculated that Saunders faced a guidelines range of "262 to 327 months' imprisonment, to be followed by a mandatory consecutive term of 60 months' imprisonment, [resulting] in a guideline range of 322 to 387 months." (Doc. 513 ("Sent'g Tr.") 60:1-7; *see also id.* 71:14-17.) In examining the circumstances of the offense, I noted that it was "troubling" that Saunders engaged in the criminal conduct "within weeks or a month or so of [his] release from a

2

prior federal sentence." (*Id.* 72:15-17, 74:4-5.)  Nevertheless, I sentenced Saunders to a total below-guidelines sentence of 228 months in prison, or 19 years, to be followed by a term of supervised release of five years.  (*Id.* 75:13-16.)

On February 6, 2018, Saunders filed a notice of appeal.  (Doc. 517.)  On July 8, 2021, the Second Circuit affirmed his sentence.  *United States v. Saunders*, 852 F. App'x 46 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 839, 211 L. Ed. 2d 518 (2022).[2]  Saunders is currently housed in USP Victorville, and his projected release date is June 23, 2034.  *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited November 19, 2024) (BOP Register Number 62007-054).

Saunders filed a pro se motion for compassionate release with this Court on February 25, 2021.  (Doc. 710 ("Pet'r's Mot.").)[3]  The Government filed a memorandum in opposition to Saunders' motion on April 8, 2021.  (Doc. 711 ("Gov't's Opp.").)  On April 13, 2021, I directed Saunders to submit any reply to the Government's opposition by no later than May 4, 2021.  (Doc. 712.)  I also directed Saunders to address in his reply "what impact, if any, his receipt of the vaccine has on his request."  (*Id.*)  Saunders did not file a reply.

## II. **Legal Standards**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Section 3582(c)(1)(A)(i) of Title 18 of the United States Code, the compassionate release statute, provides one such exception.  The compassionate release statute permits a court to "reduce" a

---

[2] Because the Second Circuit decided Saunders' appeal, I need not address the Government's argument that I lack jurisdiction to grant Saunders' motion.  (*See* Gov't's Opp. 4–5.)

[3] A prisoner's filings are deemed filed on the date they are delivered to prison officials for mailing.  *See Hodge v. Greiner*, 269 F.3d 104, 106 (2d Cir. 2001).  Therefore, I treat the signature date on documents filed by Petitioner as the presumptive filing date of those documents.

term of imprisonment if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  A court must also consider the factors set forth in 18 U.S.C. § 3553(a), including, among other things, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "the kinds of sentences available;" and "the need to avoid unwarranted sentence disparities." *See* 18 U.S.C. § 3582(c)(1)(A) (citing 18 U.S.C. § 3553(a)). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

Prior to December 2018, a court could not order compassionate release unless the Bureau of Prisons ("BOP") requested such relief on a prisoner's behalf.  *See Gotti*, 433 F. Supp. 3d at 614.  This all changed in December 2018 when Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely.  *See id.*  The statute clearly states that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[4]

Requiring inmates to exhaust their administrative remedies before seeking court

---

[4] The federal Sentencing Guidelines have also since been revised to reflect the court's ability to order compassionate release upon a prisoner's request. *See* U.S.S.G. § 1B1.13(a) ("Upon motion of . . . the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . .").

4

intervention serves several purposes.  First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).  Second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*  "The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99-cr-157, 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020).  There are two types of exhaustion requirements: jurisdictional requirements and non-jurisdictional requirements.  Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted).  Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004).  The Second Circuit has held that the exhaustion requirement in § 3582(c)(1)(A) is not a jurisdictional limitation, but is instead a claim-processing rule. *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021) (per curiam).

### III. Discussion

#### A. *Exhaustion*

Saunders submitted a petition for compassionate release to the Warden of his facility on March 26, 2020, (Pet'r's Mot. 2–3),[5] and that petition was denied on either July 2, 2020 or July 14, 2020, (*see id.* at 1 (indicating both dates)).  The Government does not challenge Saunders' motion on the basis that he has failed to exhaust his administrative remedies. (*See* Gov't's Opp. 5 n.2 ("Because more than 30 days have passed since Saunders' filing of his request with the

---

[5] The page numbers for Pet'r's Mot. refer to the page numbers assigned by ECF.

Warden, the Government believes that the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) has been satisfied.").)  Moreover, regardless of whether the Warden denied Saunders' petition on July 2, 2020 or July 14, 2020, the Warden, as the Government notes, failed to act on Saunders' request within 30 days of Saunders' submission on March 26, 2020.  *See Brooker*, 976 F.3d at 236 ("Congress allowed people seeking compassionate release to avoid BOP if BOP rejects their motions or fails to act on them within a short time period, only 30 days.  *See* 18 U.S.C. § 3582(c)(1)(A) (allowing for the filing of a motion with the court when administrative options are exhausted or 30 days pass, 'whichever is earlier').").  Accordingly, I find that Saunders has exhausted his administrative remedies, and I address the substance of Saunders' motion.

      **B.**     *Extraordinary and Compelling Circumstances*

Saunders argues that because he is within a category of people whom the Centers for Disease Control "consider the most vulnerable" to COVID-19, his medical conditions constitute an extraordinary and compelling circumstance that warrant a reduction of his sentence.  (Pet'r's Mot. 2.)  Specifically, Saunders suffers from high blood pressure and type 2 diabetes.  (*See id.* at 3, 8.)  Saunders had previously disclosed to probation that he was diagnosed with diabetes in 2016 and with high blood pressure in 2000.  (PSR ¶ 75.)  Saunders also says that he "contracted the virus and became seriously ill as a result, and may not survive another bout with the virus."  (Pet'r's Mot. 8.)  Saunders' medical records, submitted by the Government, indicate that while Saunders tested positive for COVID-19 in December 2020, he was "[a]symptomatic."  (Doc. 711-2.)  Those medical records also indicate that he received his first dose of the Moderna vaccine in February 2021 and his second dose in March 2021.  (*See* Doc. 711-1.)

6

The Center for Disease Control and Prevention ("CDC") cautions on its website that it is "learning more about COVID-19 every day, and as new information becomes available" and as a result continually updates information on its website. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, (last updated June 24, 2024), https://www.cdc.gov/covid/risk-factors/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC currently advises that people with certain medical conditions are "more likely to get very sick with COVID-19," including individuals with diabetes (either type 1 or type 2) and "possibly" individuals with high blood pressure (hypertension). *Id.*

"Nearly half of adults have high blood pressure (48.1%, 119.9 million). This is defined as a systolic blood pressure greater than 130 mmHg or a diastolic blood pressure greater than 80 mmHg or are taking medication for high blood pressure." *Facts about high blood pressure in the United States*, Centers for Disease Control and Prevention, (last updated May 15, 2024), https://www.cdc.gov/high-blood-pressure/data-research/facts-stats/?CDC_AAref_Val=https://www.cdc.gov/bloodpressure/facts.htm. Saunders failed to provide any blood pressure readings or related medical records, so I do not have a factual record concerning the severity of Saunders' condition.[6] However, at most, Saunders is "possibly . . . more likely to get very sick from COVID-19" because of his high blood pressure. *People with Certain Medical Conditions*, CDC, *supra*. In short, I cannot find under the circumstances presented here that Saunders has met his burden of establishing that his high blood pressure amounts to an extraordinary and compelling reason such that he is entitled to compassionate release. Furthermore, to make that finding I

---

[6] Saunders did provide a proposed release plan and some additional medical information, (*see* Pet'r's Mot. 10–17), which he requested to file under seal, (*see id.* at 5). I direct the Clerk of Court to seal those pages per Saunders' request.

7

would have to conclude "that a significant portion of the federal prison population who are at risk of COVID-19 . . . would also be entitled to the same relief." *See United States v. Schaefer*, 7-cr-498, 2020 WL 3957396, at *3, (S.D.N.Y. Apr. 29, 2020). I decline to do so. *See also United States v. Allums*, No. 15-CR-153, 2020 WL 5796265, at *4 (S.D.N.Y. Sept. 29, 2020) (Broderick, J.) (finding a defendant's heightened COVID-19 risk due to high blood pressure did not warrant compassionate release).

"People with diabetes are more likely to have serious complications from COVID-19. . . . Your risk of getting very sick from COVID-19 is likely to be lower if your diabetes is well-managed." *Frequently Asked Questions: COVID-19 and Diabetes*, American Diabetes Association (last visited November 19, 2024), https://diabetes.org/getting-sick-with-diabetes/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes. Again, Saunders failed to provide any glucose readings or other relevant medical records, so I have no way of evaluating whether his diabetes is well-managed. Although diabetes may under certain circumstances constitute "compelling and extraordinary" circumstances depending on the facts, *cf. United States v. Ng Lap Seng*, No. 15-CR-706, 2021 WL 961749, at *5 (S.D.N.Y. Mar. 15, 2021) (Broderick, J.), Saunders fails to make such a showing here.

Saunders also reports that he contracted COVID-19 while incarcerated. (Pet'r's Mot. 8.)[7] Of course that is unfortunate. However, the CDC has found that "[o]nce you have had COVID-19 . . . [your] immune response can protect you against reinfection for several months." *About Reinfection*, Centers for Disease Control and Prevention (last updated June 14, 2024), https://www.cdc.gov/covid/about/reinfection.html?CDC_AAref_Val=https://www.cdc.gov/coron

---

[7] At this point, most Americans have contracted COVID-19. *See* Apoorva Mandavilli, *The Coronavirus Has Infected More Than Half of Americans, the C.D.C. Reports*, N.Y. Times (Apr. 26, 2022), https://www.nytimes.com/2022/04/26/health/coronavirus-antibodies-americans-cdc.html.

8

avirus/2019-ncov/your-health/reinfection.html. Although "this protection [against infection] decreases over time," "[p]rotection against severe COVID-19 illness generally lasts longer." *About Reinfection*, *supra*. Moreover, Saunders has received at least the first and second doses of the Moderna vaccine. (*See* Doc. 711-1.) Having received the vaccine, Saunders is very unlikely to become seriously ill or die. *See* Lindsey R. Baden, et al., *Efficacy and Safety of the mRNA-1273 SARS-CoV-2 Vaccine*, The New England Journal of Medicine, https://www.nejm.org/doi/full/10.1056/nejmoa2035389 ("The mRNA-1273 vaccine showed 94.1% efficacy at preventing Covid-19 illness, including severe disease [in a phase 3 clinical trial]."); *see also United States v. Pabon*, No. 17-cr-312, 2021 WL 603269, at *3–4 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release request where inmate had been vaccinated) (collecting cases). Accordingly, under the specific circumstances presented here, I find that Saunders' personal risk of serious illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### C. *Section 3553(a) Factors*

Even if Saunders were able to demonstrate extraordinary and compelling circumstances that counseled in favor of compassionate release, the factors under 18 U.S.C. § 3553(a) counsel against his release. Saunders' applicable guideline sentence was a minimum term of 322 months, or 26.8 years. (Sent'g Tr. 60:1-7.) I gave Saunders a below-guidelines sentence of 228 months, or 19 years. (*Id.* 75:13-16.)

Saunders had previously been sentenced to a term of 10 years for a previous narcotics offense but was resentenced due to a change in the law. (*See id.* 72:15-73:6.) Judge Colleen McMahon, resentenced Saunders to a below-guidelines sentence of 60 months. (*See id.*) Almost

immediately upon release from federal custody, Saunders rejoined a drug trafficking organization selling massive quantities of cocaine, crack, and heroin, highly addictive drugs that "devastate[] not only communities, but families and people." (*Id.* 74:6-14.) Saunders also possessed a gun in furtherance of the narcotics conspiracy. (*See* PSR ¶ 22.) Saunders' conduct was extremely serious. What's more, Saunders returned to such criminal conduct after previously being granted a reduced sentence.

For the reasons stated in detail at Saunders' sentencing, which are incorporated by reference here, and those outlined above, I find that modifying Saunders' term of imprisonment would be inconsistent with the sentencing factors contained in Title 18, United States Code, Section 3553(a). Saunders' sentence reflected the seriousness of his conduct, the nature of the offense, and his personal history. I do not find that the circumstances have changed, including due the current health crises due to COVID-19, so dramatically as to warrant a sentence of time served.

## IV.     Conclusion

For the reasons stated above, because Saunders has failed to demonstrate any extraordinary and compelling circumstances that would warrant the reduction of his sentence and early release, and because the Section 3553(a) factors militate against reducing Saunders' sentence to time served, Saunders' motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to seal pages 10 through 17 of Doc. 710, to terminate all open motions, and to mail a copy of this Opinion & Order to the pro se petitioner.

SO ORDERED.

Dated: November 20, 2024
      New York, New York

Vernon S. Broderick
United States District Judge